## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

MARK LITTLE,

        Plaintiff,

v.                                Case No:  2:14-cv-417-FtM-38CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

### REPORT AND RECOMMENDATION[1]

Plaintiff Mark Little appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI").   For the reasons discussed herein, it is recommended that the decision of the Commissioner be reversed and this matter be remanded to the Commissioner pursuant to 42 U.S.C. § 405(g),[2] sentence four.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

## I.      Issues on Appeal

Plaintiff raises three issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") finding that Plaintiff's mood disorder, panic disorder, anxiety disorder, post-traumatic stress disorder ("PTSD") and cognitive disorder are non-severe; (2) whether the ALJ considered all of Plaintiff's impairments in his residual functional capacity ("RFC") assessment; and (3) whether the ALJ erred by failing to consult a vocational expert ("VE").

## II.      Procedural History and Summary of the ALJ's Decision

On September 24, 2011, Plaintiff filed an application for SSI alleging a disability that began on February 20, 2002.   Tr. 111.   The Social Security Administration denied his claim initially on October 15, 2010, and upon reconsideration on February 7, 2011.   Tr. 79, 82-84.   Plaintiff requested and received a hearing before ALJ Larry J. Butler on August 1, 2012, during which he was represented by an attorney.   Tr. 42-71.   Plaintiff testified at the hearing.

On January 18, 2013, the ALJ issued a decision finding that Plaintiff is not disabled and denying his claim.   Tr. 20-30.   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 24, 2010, the application date.   Tr. 22.   At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, lumbago, and obesity.   *Id.*

In doing so, the ALJ specifically considered Plaintiff's medically determinable mental impairment of generalized mood disorder and found that it "does not cause

more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." Tr. 23. In making this finding, the ALJ considered the four broad functional areas set out in the regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, the so-called "paragraph B" criteria.[3] In the first functional area of daily living, the ALJ determined that Plaintiff has a mild limitation. Tr. 24. The ALJ found that according to the evidence of record, Plaintiff is able to care for three dogs, care for his personal needs and complete household chores. *Id.* The ALJ noted that although Plaintiff is unable to shop, this is related to physical rather than mental impairments. *Id.* Additionally, he found that any problems Plaintiff experiences doing housework is due to pain rather than a mental impairment. *Id.* The ALJ also discussed a third party report from Peggy Klein, Plaintiff's girlfriend, that Plaintiff is able to prepare sandwiches and shop for food with her assistance. Tr. 24, 168-77. Thus, the ALJ found only a mild limitation in the functional area of daily living. Tr. 24.

In the next functional area, social functioning, the ALJ also found that Plaintiff has a mild limitation. *Id.* Although Plaintiff reported difficulty getting along with others and an inability to go out alone, the ALJ noted that the Plaintiff maintains a relationship with family members and friends via telephone, computer and in person. *Id.* Moreover, he goes out weekly, and Ms. Klein reported that he is able to go out on his own. Tr. 24, 172. Based on this information, the ALJ found that Plaintiff has a mild limitation in the area of social functioning. Tr. 24.

---

[3] 20 C.F.R., Part 404, Subpart P. Appendix 1.

In the third functional area of concentration, persistence or pace, the ALJ found that Plaintiff has mild limitation.  *Id.*  The ALJ noted that while Plaintiff reported difficulty with memory, completing tasks and understanding, Ms. Klein reported that Plaintiff only has difficulty with memory.  Tr. 24, 174.  Additionally, based on the ALJ's observations at the hearing, Plaintiff had no memory deficits.  *Id.* Plaintiff reported that he completed what he started and was able to follow both written and oral instructions.  *Id.*  Moreover, Plaintiff watches television, reads, and is able to use the computer for e-mail and online poker.  *Id.*  Thus, the ALJ concluded that Plaintiff has a mild limitation in the functional area of concentration, persistence, or pace.  *Id.*

In the fourth functional area of episodes of decompensation, the ALJ found that Plaintiff had experienced no episodes of decompensation of an extended duration. *Id.*  Accordingly, the ALJ concluded:   "because the claimant's medically determinable mental impairments caused no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they were non-severe."   Tr. 25.

At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.*

Taking in account the effects from some of Plaintiff's impairments, the ALJ determined that Plaintiff has the RFC to perform the full range of medium work.   Tr. 26.  The ALJ found that Plaintiff's medically determinable impairments reasonably

could be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely credible.   Tr. 27.   The ALJ found that Plaintiff has no past relevant work ("PRW") but there are jobs existing in significant numbers in the national economy that Plaintiff can perform.   Tr. 29.   Thus, the ALJ found that Plaintiff is not disabled and denied his claim.   *Id.*

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on May 29, 2014.   Tr. 1-3.   Accordingly, the ALJ's January 18, 2013 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on July 29, 2014.   Doc. 1.

### III.   Summary Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected either to result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §§ 404.1520, 416.920.   The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

"The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote v. Chater*, 67 F.3d

1553, 1560 (11th Cir. 1995); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote*, 67 F.3d at 1560 (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).

Accordingly, where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

IV.   Discussion

a. *The ALJ's Determination of the Severity of Plaintiff's Mental Impairments at Step Two*

Plaintiff argues that the ALJ erred in finding that Plaintiff's mood disorder, panic disorder, anxiety disorder, PTSD and cognitive disorder were non-severe at step two of the sequential evaluation process. Doc. 22 at 11. Plaintiff asserts that his mental impairments are well-documented in the record and significantly limit his ability to perform basic work activities. *Id.* The Commissioner responds that "[t]he ALJ fully evaluated Plaintiff's alleged mental impairments and properly determined that those impairments, considered singly or in combination, did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities." Doc. 25 at 5. The Commissioner argues that the ALJ found that Plaintiff's mild treatment records, malingering and activities demonstrate that Plaintiff did not have more than minimal limitations in his ability to perform basic mental work. *Id.* at 6-7. Additionally, the Commissioner asserts that the ALJ could not have committed error at step two because he still found other severe impairments and continued with the sequential evaluation process. *Id.* at 5-6.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff bears the burden of establishing that his impairments are severe and prevent the performance of his past relevant work. *Bowen*, 482 U.S. at 146 n.5. A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities.

20 C.F.R. § 404.1520(c).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The Social Security Regulations provide that an "impairment or combination of impairments is not severe if it does not significantly limit your . . . . mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).   Basic work activities mean "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1521(b).   Examples of mental requirements set forth in the regulations include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work-setting.   *Id.* § 404.1521(b)(3)-(6).

In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a "special technique," which the ALJ applied in this case.   20 C.F.R. § 404.1520a; *see* Tr. 24.   Under the special technique, the ALJ will rate the degree of functional limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.   20 C.F.R. § 404.1520a(c)(3).   The degree of limitation in the first three areas are rated on a five point scale of none, mild, moderate, marked, and extreme; and the fourth area is rated as none, one or two, three, four or more.   20 C.F.R § 404.1520a(c)(4). Once the degree of limitation in each area is determined, if the degree of limitation in the first three functional areas is none or mild and the

fourth area is none, the ALJ generally will find, as he did here, the impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation in ability to do basic work activities.   20 C.F.R. § 404.1520a(d)(1).   The ALJ's decision must incorporate findings and conclusions based on the special technique.   20 C.F.R. § 404.1520a(e)(4).

Here, at step two, after determining that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, lumbago, and obesity, the ALJ stated, "[t]he claimant's medically determinable mental impairment of generalized mood disorder does not cause more than minimal limitation in the claimant's ability to perform based mental work activities and is therefore non-severe."   Tr. 23.   In making his finding, the ALJ followed the special technique or paragraph B criteria, wherein he rated the degree of functional limitation resulting from Plaintiff's alleged mental impairments and found that the criteria were not satisfied.   Tr. 24.

Contrary to Plaintiff's assertions, the ALJ thoroughly considered Plaintiff's mental impairments in his analysis of whether they qualified as severe impairments by examining both the medical records and opinion evidence.   Additionally, upon applying the special technique and considering the four broad functional areas for evaluating mental disorders, the ALJ found only mild limitations in Plaintiff's activities of daily living; social functioning; and concentration persistence or pace. Tr. 24.   He found no episodes of decompensation of extended duration.   *Id.*   Based on these findings, the ALJ determined that Plaintiff's mental impairments were non-severe.   Tr. 25.

First, the ALJ considered the records of Dr. Edward Tilson, one of Plaintiff's treating doctors from Bay Pines Veterans Affairs Medical Center ("Bay Pines").[4]   Dr. Tilson opined that Plaintiff has moderate to extreme limitations in sustained concentration or persistence.   Tr. 332.   Specifically, Dr. Tilson concluded that Plaintiff would have extreme difficulty carrying out detailed instructions, maintaining attention and concentration for extended periods and performing activities within a schedule.   *Id.*   Dr. Tilson also noted moderate difficulties with social interaction including Plaintiff's ability to interact appropriately with the general public, get along with others and maintain socially appropriate behavior. Tr. 333.   According to Dr. Tilson, Plaintiff also has moderate difficulty in adaptation. *Id.*   Plaintiff struggles with his ability to respond to changes in a work setting, be aware of normal hazards and take the necessary precautions, travel to unfamiliar places and set realistic goals and make plans.   *Id.*   Dr. Tilson also concluded that Plaintiff is not a malingerer.   *Id.*

The ALJ considered and discussed the opinions of Dr. Tilson but ultimately gave the opinions little weight.   Tr. 23-24.   The ALJ found Dr. Tilson's opinions to be inconsistent with the normal mental status findings showing intact memory, appropriate affect and good mood.   Tr. 24.   The ALJ also noted that Dr. Tilson treated Plaintiff for only 5 months.   *Id.*   The ALJ found that Plaintiff exaggerated his symptoms and that the severity of the conditions as outlined had not existed for

---

[4] The ALJ misidentified Dr. Tilson as Dr. Thakur (Tr. 23-24).   Doc. 25 at n. 4.   This error was harmless, and Plaintiff fails to show any prejudice that resulted from the misidentification.   *See Shinseki v. Sanders*, 556 U.S. 396 (2009).

a year, and Dr. Tilson made no mention that they were expected to last for a year. *Id.*   Additionally, the ALJ noted that "the claimant stated that his anxiety has never caused any work related issues, and that he physically is unable to work."   Tr. 23. Accordingly, the ALJ found that the medical evidence did not support Dr. Tilson's opinions that Plaintiff had severe mental limitations.   Tr. 24.

Under the Regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ."   20 C.F.R. § 404.1527(c)(2).   Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown."   *Castle v. Colvin*, 557 Fed. App'x  849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).   "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's

own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1241).

If the opinion of a treating physician as to the nature and severity of a claimant's impairment is supported by acceptable medical evidence and is not inconsistent with other substantial evidence of record, the treating physician's opinion is entitled to controlling weight. SSR 96-2p; 20 C.F.R. § 404.1527(c). By contrast, if the ALJ does not afford controlling weight to a treating physician's opinion, he must clearly articulate the reasons for doing so. *Winschel*, 631 F.3d at 1179. Although the regulations require that the ALJ consider all factors set forth in 20 C.F.R. § 404.1527(c), the ALJ is not required to expressly address each factor so long as he demonstrates good cause to reject the opinion. *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. App'x 830, 833 (11th Cir. 2011).

Here, the ALJ clearly articulated his reason for assigning Dr. Tilson's opinions little weight. When compared with the other evidence of record, the ALJ found the Dr. Tilson's opinions to be inconsistent. Tr. 24. The ALJ specifically referenced the records from Bay Pines. Tr. 335-403. On May 2, 2012, a progress note indicated that Plaintiff was alert, attentive, oriented, cooperative and appropriate. Tr. 355. The report noted that Plaintiff's mood was anxious but his thought process was normal and coherent. *Id.* During this visit, Plaintiff was assessed on the Beck Scale which indicated that Plaintiff's symptoms were consistent with a depressive episode. Tr. 357-58. Plaintiff, however, also was administered the Minnesota Multiphasic Personality Inventory and the results suggested that Plaintiff was over-

reporting his symptoms, and therefore the test was not valid for interpretation due to exaggeration.   Tr. 358.   The psychologist found that while Plaintiff exhibited mild to moderately impaired reasoning ability and memory, all of his other domains were within normal limits.   *Id.*   Moreover, Plaintiff exhibited symptoms of depression but then verbally denied that he has ever been depressed.   Tr. 359.   Plaintiff was diagnosed with a mood disorder and a cognitive disorder.   *Id.*

The ALJ also evaluated Plaintiff's progress note from Bay Pines on January 26, 2012 indicating that Plaintiff reported that he was in a lot of pain, depressed and anxious.   Tr. 23, 365.   During the same visit, the psychologist noted that Plaintiff was alert, attentive, and cooperative.   Tr. 366.   The ALJ acknowledged, however, that Plaintiff's "mood was described as anxious, dysphoric and depresses [sic], and his affect was blunted, restricted, and constricted."   Tr. 23, 369.   Plaintiff was diagnosed with a mood disorder, anxiety and depressive disorder, panic disorder feature, and a pain disorder.   Tr. 369.   The ALJ properly discussed and considered this information when making his finding that Plaintiff's mental impairments were non-severe.   Tr. 23-25.

As the Commissioner notes, the ALJ's findings also are consistent with the findings of Dr. Judith Meyers, a state agency psychologist.   Doc. 25 at 7.   Dr. Meyers found that Plaintiff had anxiety related disorders that were non-severe.   Tr. 199.   Dr. Meyers also concluded that Plaintiff had mild restrictions in activities of daily living, social functioning, and maintaining concentration, persistence or pace.   *Id.*

She also stated that Plaintiff had no episodes of decompensation of extended duration. *Id.* These findings further support the ALJ's conclusions.

Moreover, as the Commissioner argues, once the ALJ determined that Plaintiff had a severe impairment, that was sufficient to satisfy step two and proceed to step three of the sequential evaluation where the ALJ was required to consider Plaintiff's entire medical condition, including his non-severe impairments. *Burgin v. Comm'r of Soc. Sec.*, 420 Fed. App'x 901, 902 (11th Cir. 2001). As the Eleventh Circuit has stated, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Thus, the ALJ's findings were not in error.

### b. The ALJ's Determination of Plaintiff's RFC

Plaintiff next argues that the ALJ failed to comply with Social Security Ruling 96-8p [5] when he failed to consider all of Plaintiff's impairments in his RFC assessment and did not account for any limitations caused by Plaintiff's mood disorder, anxiety disorder, PTSD and cognitive disorder. Doc. 22 at 13. The Commissioner responds that "the ALJ fully considered the impact of Plaintiff's mental impairments and properly determined the impairments did not cause more than minimal limitations on Plaintiff's ability to work." Doc. 25 at 13.

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ then will proceed to step four to

---

[5] SSR 96-8p provides that "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."

assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   Tr. 25; 20 C.F.R. §§ 404.1520(e), 416.920(e).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c).   The claimant's age, education and work experience are considered in determining his RFC and whether he can return to his past relevant work, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments.   *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).   The ALJ also "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.   20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p; *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).   The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.   *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

With respect to Plaintiff's mental impairments, despite the objective evidence indicating that Plaintiff suffers from a mood disorder, panic disorder, and cognitive disorder, the ALJ failed to discuss these impairments and how they affect Plaintiff's RFC.   While the ALJ concluded that these impairments were non-severe at step two, the ALJ still is required to evaluate how the impairments affect Plaintiff's RFC.

C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p; *Gibson* 779 F.2d at 623. Surprisingly, the ALJ acknowledges that the RFC "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B"; yet he failed to do so.   Tr. 25. The ALJ makes minimal mention of Plaintiff's mental impairments as he determined Plaintiff's RFC.   The ALJ simply stated that he did not accept the mental diagnosis of Dr. Rajan Sareen, a doctor of internal medicine and cardiology, because it was outside of Dr. Sareen's area of expertise and seemed to be based solely on Plaintiff's subjective complaints.   Tr. 28, Tr. 194.   The ALJ also commented that Plaintiff reported dreams of combat although Plaintiff had no combat exposure.   *Id.*   The ALJ failed to include any well-articulated findings whatsoever as to how Plaintiff's mental impairments may impact his RFC.   The utter lack of discussion renders the Court unable to determine whether the ALJ even considered the limiting effects of these impairments.   Remand therefore is warranted as to this issue.   On remand, the ALJ should address and explain the limiting effects, if any, of Plaintiff's mental impairments.   If the ALJ determines on remand that Plaintiff's mental impairments do not affect his RFC, he should include the relevant evidence supporting his conclusion, as required by the regulations.   Because he failed to do so here, the Court finds that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence.

### c.   The ALJ's Reliance on the Medical-Vocational Guidelines

Finally, Plaintiff argues that the ALJ improperly relied upon the Medical-Vocational Guidelines ("grids") in finding that there are jobs that exist in the national

economy that Plaintiff is able to perform.   Doc. 22 at 15.   Instead, Plaintiff asserts that the ALJ should have consulted a VE to determine the effects Plaintiff's non-exertional limitations have on the occupational base.   *Id.*   The Commissioner argues that the ALJ properly relied on the grids because the ALJ found that Plaintiff's mental impairments caused no more than minimal limitations of Plaintiff's ability to perform basic mental work activity.   Doc. 25 at 14.

"Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985).   "It is only when the claimant can clearly do unlimited types of [ ] work that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989). Thus, "[w]hen a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a VE." *Smith v. Soc. Sec. Admin.*, 272 Fed. App'x 789, 799-800 (11th Cir. 2008) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)).   If non-exertional impairments are minor or are found to be not credible, however, then exclusive reliance on the grids may be appropriate. *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 826 (11th Cir. 2010).

An exertional limitation is a limitation that affects one's ability to sit, stand, walk, lift, carry, push or pull.  20 C.F.R. § 404.1569a.   Exertional limitations affects one's ability to meet the strength demands of jobs.  *Id.*   Non-exertional limitations cause restrictions that affect one's ability to meet the demands of jobs other than strength demands.  *Id.*  "Mental impairments are generally considered to be non-exertional."  SSR 85-15.

Based upon the Court's conclusions that the ALJ's failure to include or adequately address Plaintiff's non-exertional or mental impairments prevents the Court from finding that the ALJ's RFC determination is supported by substantial evidence, the Court similarly is not convinced that exclusive reliance on the grids was appropriate here.   On remand, if the Commissioner finds that Plaintiff's mental impairments limit his ability to perform basic mental work activity, then testimony from a VE regarding whether other jobs exist that Plaintiff can perform would be appropriate. Because a determination whether a VE is required depends, at least in part, upon the ALJ's determinations with respect to the arguments addressed throughout this Report and Recommendation, the Court declines to expressly direct the Commissioner to elicit testimony from a VE on remand.   The Court will leave that determination to the Commissioner after reevaluating the medical and opinion evidence of record in accordance with the Court's directives set forth herein.

## V.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ failed to apply the proper legal standards when he failed to make a specific finding as to

whether Plaintiff's mental impairments significantly limit Plaintiff's basic work skills.   Therefore, the Court finds that the ALJ's decision is not supported by substantial evidence.

ACCORDINGLY, it is hereby

**RECOMMENDED:**

1.   The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

> a.   sufficiently explain the effects of Plaintiff's mental impairments on his RFC, if any;
>
> b.   if the Commissioner finds that Plaintiff's mental impairments limit his ability to perform basic mental work activity, then   the Commissioner should elicit testimony from a VE regarding whether other jobs exist that Plaintiff can perform; and
>
> c.   make any further determinations consistent with this Opinion and Order, or in the interest of justice.

2.   The Clerk of Court be directed to enter judgment accordingly, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 6th day of January, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record